ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
  – and –
TRAVIS E. DOWNS III (148274)
BENNY C. GOODMAN III (211302)
ERIK W. LUEDEKE (249211)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
travisd@rgrdlaw.com
bennyg@rgrdlaw.com
eluedeke@rgrdlaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT L. MORTON, Derivatively on Behalf of OCZ TECHNOLOGY GROUP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RALPH H. SCHMITT, ADAM J. EPSTEIN, RICHARD L. HUNTER, RUSSELL J. KNITTEL, RYAN M. PETERSEN and ARTHUR F. KNAPP, JR., <br><br> Defendants, <br><br> – and – <br><br> OCZ TECHNOLOGY GROUP, INC., a Delaware corporation, <br><br> Nominal Party. | No. 12 6343 <br><br> DERIVATIVE ACTION <br><br> VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

# INTRODUCTION

1. This is a shareholder derivative action on behalf of nominal party OCZ Technology Group, Inc. ("OCZ" or the "Company"). OCZ designs and sells Solid-State Drives ("SSDs") and related computer components.

2. Between at least July 2012 and October 2012, OCZ's directors and top officers made materially false and misleading statements regarding OCZ's financial condition and prospects for future growth. Specifically, defendants Ryan M. Petersen, Arthur F. Knapp, Jr., Ralph H. Schmitt, Adam J. Epstein, Richard L. Hunter and Russell J. Knittel (together "defendants") failed to disclose that the Company's sales trends were not as robust as they had stated and that rather, in order to address those negative trends in OCZ's business, defendants were promising to pay customers "incentives" (*i.e.*, rebates) in order to obtain sales, rendering their statements concerning OCZ's financial results materially false and misleading. As a result of defendants' unlawful scheme, OCZ's stock traded at artificially inflated prices, reaching a high of $7.67 per share on July 30, 2012.

3. The true facts, which were known by defendants but concealed, were that: (a) OCZ's financial results were materially false and misleading in violation of Generally Accepted Accounting Principles ("GAAP"); (b) OCZ's business was not growing to the extent represented by defendants; and (c) OCZ's internal controls were so poor and inadequate that OCZ's reported results were not reliable.

4. Defendants' scheme continued unabated throughout the summer of 2012. Then, on September 5, 2012, OCZ reported that its revenue for the second quarter of 2013 ("2Q13"), ended August 31, 2012, would be in the range of $110 to $120 million instead of the $130 to $140 million projected on July 10, 2012, causing OCZ's stock price to decline approximately $1 per share. To allay shareholders' concerns, however, defendants falsely attributed the decline in OCZ's revenue guidance to supply constraints, stating demand for OCZ's product offerings had simply overwhelmed available supply.

5. Just as OCZ shareholders were digesting these revelations, defendants stunned them again. On October 10, 2012, OCZ announced it was unable to file its Form 10-Q for 2Q13. Worse yet, on the same date OCZ disclosed that its 2Q13 revenue would be significantly lower than the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 1 -

1  $110 to $120 million range provided on September 5, 2012, and that the Company now expected to
2  report negative gross margins and a significant net loss for its 2Q13. OCZ further explained that its
3  financial statements were still under review by the Company's accounting firm, and suggested that
4  there could be significant inventory write-downs for redundant and unsalable product. OCZ
5  attributed the revenue revision and filing delay to the impact of customer incentive programs which
6  the incoming Chief Executive Officer ("CEO") stated the outgoing CEO, defendant Ryan M.
7  Petersen, had promised in order to bring in business. OCZ also disclosed that it would be reporting
8  material weaknesses in its internal controls in its Form 10-Q, which the Company said would be
9  filed on October 15, 2012. On this news, the trading price of OCZ stock collapsed by 40%, wiping
10 out millions of dollars in shareholders' equity.

11    6.    On October 11, 2012, defendants notified the Securities and Exchange Commission
12 ("SEC") that OCZ now required "additional time for compilation and review to insure adequate
13 disclosure of certain information" and that "the Company [could not] currently estimate the exact
14 filing date of the Form 10-Q for the quarter ended August 31, 2012." On this news, OCZ shares
15 collapsed again, wiping out millions more in shareholders' equity.

16    7.    OCZ has been severely damaged and injured by defendants' faithless and disloyal
17 acts. Among other things, the Company has been named as a defendant in costly and expensive to
18 defend class action lawsuits for violations of the federal securities laws. Nonetheless, the OCZ
19 Board of Directors has not commenced legal action against the executives responsible for this
20 debacle. By this action, plaintiff seeks relief for OCZ.

21                    **INTRADISTRICT ASSIGNMENT**

22    8.    A substantial part of the events or omissions which give rise to the claims in this
23 action occurred in the county of Santa Clara, and as such this action is properly assigned to the San
24 Jose division of this Court.

25                    **JURISDICTION AND VENUE**

26    9.    This Court has jurisdiction under 28 U.S.C. §1332(a)(1). Plaintiff and defendants are
27 citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and
28

costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10. This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the district courts permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this Court under 28 U.S.C. §1391(a) because: (i) OCZ maintains its principal place of business in this District; (ii) one or more of the defendants either reside(s) in or maintain(s) executive offices in this District; and (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' participation in the wrongful acts detailed herein, occurred in this District.

## THE PARTIES

12. Plaintiff Robert L. Morton ("Morton") has been a shareholder of OCZ continuously since March 2012. Morton is a citizen of the State of New Mexico.

13. Nominal party OCZ is a Delaware corporation with its principal executive offices located at 6373 San Ignacio Avenue, San Jose, California. OCZ is a citizen of the States of California and Delaware.

14. Defendant Ralph H. Schmitt ("Schmitt") has been a director of OCZ since April 2011, and President and CEO of OCZ since October 2012. Before October 2012, he also served on the Audit Committee of the OCZ Board. Schmitt is a citizen of the State of California.

15. Defendant Adam J. Epstein ("Epstein") has been a director of OCZ since March 2010. He also serves on the Audit Committee of the OCZ Board. Epstein is a citizen of the State of California.

16. Defendant Richard L. Hunter ("Hunter") has been a director of OCZ since March 2010. He also serves on the Audit Committee of the OCZ Board. Hunter is a citizen of the State of Texas.

17. Defendant Russell J. Knittel ("Knittel") has been a director of OCZ since June 2010. He also serves on the Audit Committee of the OCZ Board. Knittel is a citizen of the State of California.

18. Defendant Ryan M. Petersen ("Petersen") served as a director of OCZ from 2002 until September 2012. He also served as President of OCZ from May 2010 until September 2012. Petersen is a citizen of the State of California.

19. Defendant Arthur F. Knapp, Jr. ("Knapp") served as Chief Financial Officer ("CFO") of OCZ from December 2010 to until August 2012. Knapp is a citizen of the State of California.

## THE FIDUCIARY DUTIES OF OCZ'S DIRECTORS AND OFFICERS

20. As directors and officers of OCZ, defendants owed fiduciary duties to OCZ – the highest duties known to the law. These fiduciary duties include duties of loyalty, candor and good faith. Defendants' fiduciary duty of loyalty prohibits them from acting in bad faith as well as from making false statements to OCZ's shareholders about the Company's business, finances and prospects for future growth.

21. Defendants, because of their positions of control and authority as directors and/or officers of OCZ, were able to and did, directly and/or indirectly, exercise control over the wrongful acts detailed herein. Because of their executive positions and/or access to OCZ's internal information, defendants knew or should have known that OCZ's business was not performing nearly as well as they caused OCZ to publicly state, and that by making such false statements and omitting adverse, material non-public information, they were not only breaching their fiduciary duty of loyalty owed to OCZ, but also exposing the Company to damage and injury arising from misleading OCZ shareholders. Accordingly, defendants are not immune from liability under the business judgment rule and may not be indemnified by the Company for their faithless and unlawful acts.

22. Each of the defendants directly participated in the management of the Company and/or was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements alleged herein, and/or was aware that these statements were being issued regarding the Company's business operations and approved or ratified these statements. Defendants were provided with copies of OCZ's SEC reports, earnings releases, conference call remarks and similar false

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 4 -

statements alleged herein prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.

23. Because of their positions and access to material non-public information, each of the defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, shareholders and the public, and that the positive representations that were being made were false and misleading. Moreover, because of their positions of control and authority as directors and/or officers of OCZ, the defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

24. At all relevant times, defendants were the agents of each of the other defendants and were at all times acting within the course and scope of such agency.

25. By reason of their positions as officers and/or directors of OCZ and because of their ability to control the business and corporate affairs of OCZ, defendants owed and owe OCZ and its shareholders fiduciary obligations of loyalty, candor and good faith, and were and are required to use their utmost ability to control and manage OCZ in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of OCZ and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest. In addition, each officer and director of the Company owes to OCZ and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the preservation of its property and assets.

26. Additionally, defendants Epstein, Hunter, Knittel and Schmitt, as members of OCZ's Audit Committee, owed specific additional duties to OCZ under OCZ's Audit Committee Charter. Under the Audit Committee Charter, "[t]he primary purpose of the [Audit] Committee is to oversee the accounting and financial reporting processes of the Company and the audits of the Company's financial statements." The Audit Committee's duties include assisting the full OCZ Board in supervising the Company's compliance with legal and regulatory duties, assisting the Board in supervising the Company's compliance with legal and regulatory requirements, monitoring the integrity of the Company's financial statements and policing the Company's internal controls and procedures.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERNED ACTION

27. In committing the wrongful acts particularized herein, defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design. In addition to the wrongful conduct particularized herein as giving rise to primary liability, defendants further aided and abetted and/or assisted each other in breach of their respective fiduciary duties and obligations under the law.

28. Each of the defendants aided and abetted, and rendered substantial assistance, in the wrongs detailed herein. In taking such actions to substantially assist the commission of the wrongdoing detailed herein, each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing and was aware of his overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

29. OCZ designs, manufactures and sells SSDs and computer components primarily in the United States, Canada, Germany, the Middle East, Africa and other European countries. It specializes in high-speed memory in the enterprise and consumer SSD markets, a technology that competes with traditional rotating magnetic hard disk drives. The Company provides SSDs, including MLC-based drives, SLC-based drives and portable SSD and USB drives for personal computers, servers, data storage systems and industrial equipments. It also offers various components for computing devices and systems, including AC/DC switching power supplies, as well as computer gaming solutions and memory processing products. The Company sells its products directly to enterprise customers and original equipment manufacturers through its direct sales force and to other end customers through a channel of systems integrators, information technology, integrators and fulfillment and retail distributors.

30. Beginning in July 2012, defendants embarked upon an unlawful scheme designed to artificially inflate the trading price of OCZ shares. Although by issuing materially false and misleading statements defendants violated their strict fiduciary duties of loyalty, candor and good faith, they did so anyway, without regard to the damage and injuries to OCZ that would ultimately result. More specifically, on July 10, 2012, defendants caused OCZ to report its 1Q13 financial

results, for the quarter ended May 31, 2012. In this earnings press release approved by defendants on or about July 10, 2012, defendants caused OCZ to falsely stated that:

- Net revenue in Q1'13 was a record $113.6 million, and increased 54% compared with net revenue of $73.8 million reported in Q1'12.
- Q1'13 SSD revenue reached a record $106.5 million; an increase of 54% compared with Q1'12 SSD revenue of $69.1 million.
- Gross margin in Q1'13 25.0% compared with 20.0% in Q1'12.

* * *

- Achieved Record Bookings in Q1'13.
- Non-GAAP gross margin was 25.2% compared with 20.0% in Q1'12.

31. Commenting on the Company's 1Q13 results, defendant Petersen, with the approval of his co-defendants, falsely stated:

"We are again pleased to report record revenue for the quarter as demand for our SSDs has been fueled by new product introductions. We continue to gain traction with our SAN replacement products and expect these products to begin to ramp in the third quarter," said Ryan Petersen, CEO of OCZ Technology. "During our first fiscal quarter we successfully launched our next generation Indilinx Everest 2 controller platform and introduced the next generation of Agility and Vertex series SSDs based on this platform."

"During the quarter, we achieved record bookings of nearly $140 million reflecting increased order activity associated with the transition to our new generation Everest 2 based Vertex 4 and Agility 4 product lines introduced during the quarter. As a point of reference, during the quarter we shipped over 100,000 units of these new Everest 2 based products with gross margins of over 30%," added Petersen. "We believe our ongoing investments in technology and sales and marketing provide a clear strategic advantage as we bring innovative SSD products to the market."

32. When commenting on OCZ's 1Q13 profit margin, defendant Petersen, with the approval of each of his co-defendants, falsely stated:

It is our expectation that margins will continue to increase as we transition to our newer-generation products, and we're confident that our gross margins will see an incremental expansion as a result of increasing purchasing scale and improving product mix.

33. Further, when commenting on OCZ's inventory levels, defendant Petersen, with the approval of his co-defendants, falsely stated:

I think it's important to point out that we expect our NAND inventory turnover will reach normalized levels over the next two quarters. And we're glad to note that our

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 7 -

wafer inventory has already begun to drop in relation to expected sales, as we become more efficient at processing wafer. This points specifically to our balance sheet metrics. Most notably, the high inventory-to-sales ratio. In short, we expect to see considerable improvements in these metrics, which will in turn lead to a healthier balance sheet over the next few quarters.

34. Similarly, when commenting on the growth in OCZ's customer base, defendant Petersen, with the approval of his co-defendants, falsely stated:

> In regards to growth of our customer base, I'll simply state this time that we're extremely pleased with the continuing development. From consumers to OEMs and enterprises, we continue to gain meaningful traction. Our transition into the OEM and enterprise arenas continues to go well, as we add numerous clients each quarter.

35. Echoing defendant Petersen's materially false and misleading assessment of OCZ's business condition and prospects for future growth, OCZ's then CFO, defendant Knapp, added that OCZ insiders were "very pleased with the continued record revenues that [they] reported for the first quarter, and the demand [they were then] seeing for [OCZ's] new products."

36. Turning to OCZ's anticipated 2Q13 and beyond financial performance, defendants further falsely stated:

***Business Outlook and Commentary*:**

> OCZ expects net revenue for its second fiscal quarter ending August 31, 2012 (Q2'13), to be in the range of $130 to $140 million.
>
> OCZ expects net revenue for its fiscal year ending February 28, 2013 (FY'13) to be in the range of $630 to $700 million. This represents a growth rate of approximately 80% at the midpoint; we expect, based on historical trends, revenue to be weighted to the second half of the year, with approximately 60% to 65% of revenue to occur in the second half of the year.
>
> Non-GAAP gross margins are expected to increase in Q213 and to exit the year in excess of 30%, with typical sequential gross margin increases of 100 to 250 basis points per quarter throughout the fiscal year, subject to changes in product mix as the SSD landscape continues to evolve.
>
> OCZ expects non-GAAP operating expenses for Q2'13, to be in the range of $38 to $41 million with expenses exiting the year at between $43 and $47 million per quarter, as OCZ continues to invest in its ongoing growth objectives.

37. In the wake of these sterling statements regarding OCZ's positive financial results and strong prospects for future growth, the trading price of OCZ shares rapidly appreciated. In July 2012 alone, OCZ shares reached a high of $7.67 per share, increasing the Company's shareholder equity by millions of dollars.

38. Due to defendants' disloyal and unlawful market manipulation scheme, OCZ shares continued to trade at artificially inflated levels throughout the summer of 2012.

39. Then, on August 8, 2012, OCZ revealed that its CFO, defendant Knapp, would be stepping down as soon as his replacement could be identified. Four weeks later, just as OCZ shareholders were digesting the news about defendant Knapp's resignation, OCZ suddenly announced that its previously issued guidance on 2Q13 revenues would be significantly reduced. Specifically, in a press release dated September 5, 2012, defendants stated that OCZ now "expect[ed] preliminary revenue for the second fiscal quarter of 2013 to be approximately $110 to 120 million compared to the previously guided revenue range of $130 to $140 million" and that that "preliminary revenue range compare[d] to $113.6 million for the first fiscal quarter of 2013 and $78.5 million for the second fiscal quarter of 2012."

40. To allay shareholders' concerns about OCZ's lower revenue guidance, defendants attempted to blame the slowdown in revenues on supply constraints. Towards that end, defendant Petersen, with the approval of his co-defendants, falsely stated that "[d]espite achieving bookings in excess of our expectations for our second fiscal quarter, we were not able to meet our previously stated revenue guidance due primarily to constraints in NAND flash supply," and that "'[d]uring the month of August we experienced a significant shortage on certain NAND flash components, based on industry wide tightening of supply, leaving OCZ with an undersupply of the 2xnm MLC NAND used in our Vertex and Agility Line of products.'" During the conference call held later that day, defendant Peterson added: "[W]e have more than sufficient demand for our products. We really do not have any demand issues. We have an issue with too much demand, but not too little." And that "new bookings within the quarter were well in excess [of the prior] quarter. That leaves us with a really insurmountable backlog, right now. Which is, both good and bad."

41. On this news, the trading price of OCZ's shares collapsed by more than 20%, wiping out millions of dollars in shareholders' equity. A few days later, on September 17, 2012, OCZ announced that defendant Petersen had been terminated effective immediately.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 9 -

42. On October 10, 2012, OCZ stunned shareholders again by disclosing that the Company's SEC Form 10-Q for 2Q13 would not be filed on time. Specifically, in a press release the Company stated:

> OCZ Technology Group, Inc., a leading provider of high-performance solid-state drives (SSDs) for computing devices and systems, today announced that it will file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission that allows the Company to extend the deadline to file its Form 10-Q for the second quarter of fiscal year 2013 (Q2'13), which ended on August 31, 2012. With this extension, if the Form 10-Q is filed by October 15, 2012, the Form 10-Q will be deemed to be timely filed.
>
> The Company's financial statements are still under review. The Q2'13 revenue will be materially lower than the September 5th preliminary revenue range of $110 to $120 million. This new revenue estimate and filing delay is principally due to the impact of customer incentive programs which were discovered subsequent to the preliminary announcement during the normal close process, and which the Company will be reporting as a material weakness in its Form 10-Q. The Company also expects to report negative gross margins and a significant net loss for Q2'13 . . . .

43. During a conference call held later that day, OCZ explained that the revised revenue guidance issued on September 5, 2012 for 2Q13 "cannot be relied upon" due to "customer incentives that were in excess of what was normal and customary in the past." OCZ also stated that in 2Q13, there was a huge emphasis "to grow market share at all costs," so "extraordinary incentives" were undertaken (rebates), so OCZ would be delaying its SEC filings to ensure a "proper accounting treatment has been applied to this event." OCZ also stated that it would be "rationalizing the product line" and that the diversity of product line was inappropriate for a company of OCZ's size, stating OCZ plans to migrate away from more commoditized areas of SSDs and move more into the high end of both the client market as well as pushing further into the enterprise market.

44. OCZ's newly appointed CEO, defendant Schmitt, added during the conference call: "We are here to generate value for shareholders and we have failed at that mission."

45. On this news, the trading price of OCZ shares collapsed by more than 40%, wiping out millions of dollars in shareholders' equity.

46. Then, on October 11, 2012, defendants disclosed that contrary to their statement on October 10, 2012 that the Company would file its quarterly financial report for the second quarter 2013 on October 15, 2012, and meet with the investment community to explain those results,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 10 -

defendants now stated that "the Company cannot currently estimate the exact filing date of the Form 10-Q for the quarter ended August 31, 2012."

47. The true facts, which were known by the defendants but concealed, were that: (a) OCZ's financial results were materially false and misleading in violation of GAAP; (b) OCZ's business was not growing to the extent represented by defendants; and (c) OCZ's internal controls were so poor and inadequate that OCZ's reported results were not reliable.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

48. Plaintiff incorporates ¶¶1-47.

49. Plaintiff brings this action derivatively on behalf of OCZ to redress injuries suffered and to be suffered by OCZ as a proximate result of defendants' breaches of fiduciary duty and unjust enrichment. Plaintiff will adequately represent the interests of OCZ in the derivative claims asserted in this action.

50. As particularized above, defendants breached their fiduciary duty of loyalty (and candor and good faith) and engaged in unlawful conduct. Accordingly, a pre-suit demand on the OCZ Board of Directors to commence, let alone vigorously prosecute, this action is a useless and futile act, and therefore excused.

51. First, the members of OCZ's Board of Directors have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangled financial alliances, interests and dependencies. Therefore, the OCZ Board is not able to and will not vigorously prosecute any such action.

52. Second, the OCZ Board of Directors participated in, approved and/or permitted the wrongs alleged herein to have occurred, and participated in efforts to conceal or disguise those wrongs from OCZ's shareholders, or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, or conversations and connections with other corporate

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 11 -

officers, employees and directors and attendance at management and/or Board of Directors' meetings, each of the defendants knew the adverse non-public information regarding OCZ's business and financial condition. Pursuant to their specific duties as Board members, the members of the OCZ Board of Directors are charged with managing the Company and conducting its business affairs. Defendants breached their fiduciary duty of loyalty (and candor and good faith) owed to OCZ and its shareholders in that they caused false and misleading statements about OCZ's financial condition and prospects for future growth to be made to OCZ shareholders. The OCZ Board of Directors cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action, because each of its members participated personally in the wrongdoing or are dependent upon other defendants who did.

53. Third, the acts complained of constitute violations of the fiduciary duty of loyalty (and candor and good faith) owed by OCZ's directors and these acts are incapable of ratification.

54. Fourth, the members of OCZ's Board of Directors have benefited, and will continue to benefit, from the wrongdoing herein alleged, have engaged in such conduct to preserve their positions of control and the perquisites derived thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

55. Fifth, any suit by the directors of OCZ to remedy these wrongs would likely further expose defendants to liability under the federal securities laws, which could result in additional civil and/or criminal actions being filed against one or more of the defendants. Thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

56. Sixth, OCZ has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the OCZ Board of Directors has not filed any lawsuits against defendants or others who were responsible for that wrongful conduct to attempt to recover for OCZ any part of the damages OCZ suffered and will suffer thereby.

57. Seventh, during the relevant time period, defendants Schmitt, Epstein, Hunter and Knittel served as members of the Audit Committee. Under the Audit Committee Charter, the members of the Audit Committee were and are responsible for, among other things, reviewing the adequacy of OCZ's internal controls, reviewing the integrity of OCZ's financial statements and

reviewing OCZ's earnings press releases and guidance. Here, defendants Schmitt, Epstein, Hunter and Knittel breached their fiduciary duties because the Audit Committee, along with the entire OCZ Board of Directors, caused false and misleading statements to be made to OCZ shareholders in the Company's reports, and failed to ensure that adequate internal controls were in place. As a result, defendants Schmitt, Epstein, Hunter and Knittel are not disinterested and face a substantial likelihood of liability, which renders a pre-suit demand upon them futile.

58. Eighth, demand is excused because the conduct alleged herein, including the issuance of false and misleading statements to shareholders, was not the product of a valid exercise of business judgment. The conduct of the directors/defendants alleged herein, including the issuance of false and misleading statements to shareholders, was so egregious on its face that Board approval cannot meet the test of business judgment, and a substantial likelihood of director liability for breach of fiduciary duty therefore exists.

## COUNT I

### (Breach of Fiduciary Duty Against Defendants)

59. Plaintiff incorporates ¶¶1-58.

60. Defendants owe OCZ and its shareholders fiduciary duties, including the fiduciary duties of loyalty, candor and good faith.

61. Defendants have violated their fiduciary duties, including their fiduciary duties of loyalty, candor and good faith. More specifically, defendants, in breach of their fiduciary duties, made false statements and omitted to disclose adverse, material non-public information regarding the Company's revenues, earnings and operations in OCZ's shareholder reports.

62. By reason of the foregoing acts, practices and course of conduct, defendants have failed to faithfully discharge their fiduciary duties owed to OCZ and its shareholders.

63. As a proximate result of defendants' misconduct, OCZ has been injured and is entitled to damages.

## COUNT II

### (Unjust Enrichment Against Defendants)

64. Plaintiff incorporates ¶¶1-63.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT - 13 -

1  65. As a result of the misconduct particularized herein, defendants have been unjustly enriched at the expense of OCZ in the form of unjustified salaries, benefits, bonuses and other emoluments of office.

66. All the payments and benefits provided to defendants were at the expense of OCZ. The Company received no benefit from these payments.

67. As a proximate result of defendants' misconduct, OCZ has been injured and is entitled to damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of OCZ, demands judgment as follows:

A. Awarding money damages against all defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure that defendants do not participate therein or benefit thereby;

B. Directing all defendants to account for all damages caused by them and all profits, special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees and insider sales proceeds, and imposing a constructive trust thereon;

C. Directing OCZ to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, the federal securities laws and state corporation laws regarding fiduciary duties;

D. Awarding punitive damages;

E. Awarding costs and disbursements of this action, including reasonable attorneys', accountants' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: December 13, 2012

ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS

*/s/ Shawn A. Williams*
SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
    & DOWD LLP
TRAVIS E. DOWNS III
BENNY C. GOODMAN III
ERIK W. LUEDEKE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LAW OFFICE OF ALFRED G.
    YATES, JR., P.C.
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: 412/391-5164
412/471-1033 (fax)

Attorneys for Plaintiff

S:\CptDraft\Derivative\Cpt OCZ Deriv.doc

## VERIFICATION

I, Robert L. Morton, hereby declare as follows:

I am a shareholder of OCZ Technology Group, Inc. I was a shareholder at the time of the wrongdoing complained of and I remain a shareholder. I have retained competent counsel and I am ready, willing and able to pursue this action vigorously on behalf of OCZ Technology Group, Inc. I have reviewed the Verified Shareholder Derivative Complaint ("Complaint"). Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 12/8/2012

ROBERT L. MORTON